Opinion filed May 4, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed May 4, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-04-00283-CR 

                                                    __________

 

                                        ERROL YOUNG, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor
County, Texas

 

                                                   Trial
Court Cause No. 6666-D 

 



 

                                                                   O
P I N I O N

 

After a bench trial, the trial court found Errol
Young guilty of murder and assessed his punishment at twenty-five years in
prison.  Appellant admitted shooting
Marvin Louis Peacock, the victim, but claimed self-defense.  Appellant=s
only issue is that the evidence was factually insufficient to sustain his
conviction because his evidence of self-defense was not disproved beyond a
reasonable doubt.  We affirm.

 

 








Background Facts

Officer Kimberly Watkins with the Abilene Police
Department responded to a call regarding an injured man at the Eastern Oaks
Apartments.  Upon her arrival, she found
the victim lying on the ground struggling to breathe.  Appellant was in the group of people around
the victim.  Appellant was in a
wheelchair and began moving away when Officer Watkins tried to question
him.  Appellant initially told Officer
Watkins that he did not know the victim and that all he knew was that the
victim hung around the apartments smoking blunts.

Officer Watkins and Officer Tim Pipes of the
Abilene Police Department followed a trail of blood from the victim to
appellant=s
apartment, a distance of 217 feet.  The
apartment door was open; loud music was playing; and the two officers entered
to search for other victims or suspects and to secure the probable crime scene.  They noticed a handgun on the floor outside
the bathroom and a small paring knife next to a wet bar.

After obtaining a search warrant, members of the
Abilene Police Department searched the apartment.  Detective Jeffrey Guy Bell found a small
spent shell casing inside the door on the floor directly below the bar, a small
paring knife on the floor, and a small silver handgun on the carpet next to the
wall that separates the dining area from the bathroom.  A Coors beer can had fallen over and spilled
its contents by a chair that was directly by the doorway; the carpet was still
wet.  Officer Tammy McLean, a forensic
specialist, and Detective Russell Clark found an unspent shell in the parking
lot near the blood trail.  The officers
also found marihuana on the bathroom floor and in the toilet.

The bullet found in the victim=s body was fired by the .25 caliber
silver handgun found in appellant=s
apartment.  The spent cartridge and the
unspent shells also matched the handgun. 
Richard Earnest, a forensic scientist and firearms expert, testified
that the handgun was not functioning properly; each round had to be manually
fed into the chamber. The gun would not feed when the trigger was pulled or
when the cocking mechanism was pulled back. 
Earnest=s tests
showed that the gun was fired at the victim from a range of three to five feet.








Dr. Nizam Peerwani, Chief Medical Examiner for
Tarrant, Parker, and Denton counties, 
testified that the victim was six feet, two inches tall and weighed
182.2 pounds.  Dr. Peerwani testified
that the bullet struck the victim Acoming
slightly from the left side of the body to the right@
and Ain a
downward direction from front to back and laterally or away from the midline.@ 
The angle of entry of the bullet was about 25 or 30 degrees away from
the body surface.  The bullet struck a
rib and ricocheted through the victim=s
lung.

Because the path of the bullet was downward, Dr.
Peerwani pointed out that there were three possibilities:  (1) the shooter was at a greater height than
the victim, (2) the victim was seated, or (3) the victim was bending forward
and may have been seated in a chair or squatting.  Dr. Peerwani agreed with Earnest that the gun
was fired two or three feet away from the victim.  Based on the autopsy, Dr. Peerwani stated
that the victim was not facing the shooter straight on when he was shot; his
torso was at an angle, and the shooter was to the victim=s
left.  And because appellant was
wheelchair-bound when he fired the handgun, Dr. Peerwani testified that the
victim could not have been standing at that moment.  Dr. Peerwani also testified that the
toxicology report revealed that marihuana was found in the victim=s urine, indicating that the victim had
ingested the marihuana some time before he was shot and his body was in the
process of excreting the drug.

The State recalled Earnest who testified that,
after the gun was fired, a cartridge was ejected over the shooter=s right shoulder and would have landed
three to five feet behind the shooter. 
Based on where the cartridge was found, Earnest pointed out on the
apartment diagram where he thought appellant was when appellant fired the shot.

The defense called several of appellant=s neighbors as witnesses who testified
that they had heard an argument coming from appellant=s
apartment.  Jeannie Kay Riley, who lived
in Apartment No. 107, heard loud music and gruff mumbling, no yelling, and a Apow.@  Carol Ann Scott and Bradley Wayne Webb, who
lived in Apartment No. 207, heard an argument, a statement AAre you trying to kill me, m----r
f----r,@ and then
a bang.  Neither heard any loud music.

Appellant testified that the victim came to his
apartment and that they smoked some marihuana. 
Appellant stated that the marihuana tasted funny; he accused the victim
of lacing it and threatened to tell everyone about the victim=s bad marihuana.  This provoked an argument.  Appellant told the victim to leave several times,
but the victim stated that he would Awhip
[appellant=s] ass.@ 
Appellant said that he then pulled his gun out and told the victim to leave.
Appellant testified that, when the victim then turned away and reached toward
the bar countertop for the knife, appellant shot him.








Appellant testified that the victim=s threatening statements and demeanor
led him to believe that the victim would have become more aggressive.  Appellant said that he could not have
retreated because the victim was in the doorway and appellant was
wheelchair-bound.

Appellant insisted that the victim was standing
and not sitting in the chair when appellant fired the shot.  Appellant repeated that the knife was on the
countertop when the victim reached for it. 
Appellant agreed with the prosecutor that his testimony that the victim
was standing directly in front of him when he shot the victim was in direct
conflict with the testimony of Dr. Peerwani. 
Dr. Peerwani had testified that the shot entered the victim on a
downward slant and that the victim had to be sitting or leaning forward while
in a sitting or squatting position. Appellant claimed that Dr. Peerwani was
wrong.

Self-Defense

A person is justified in using force against
another person when and to the degree he reasonably believes the force is
immediately necessary to protect himself against that person=s use or attempted use of unlawful
force.  Tex.
Pen. Code Ann. '
9.31 (Vernon 2003).  The use of force is
not justified in response to verbal provocation alone.  Section 9.31(b)(1).  If a person is justified in using force under
Section 9.31, he is justified in using deadly force if a reasonable person in
the same situation would not have retreated and would have reasonably believed
that the deadly force was immediately necessary to protect himself against the
other=s use or
attempted use of unlawful deadly force.

A defendant has the burden of producing some
evidence to support a claim of self-defense. 
Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).  Once the defendant produces such evidence,
the State then bears the burden of persuasion to disprove the raised
defense.  The burden of persuasion is not
one that requires the production of evidence; rather, it requires only that the
State prove its case beyond a reasonable doubt. 
When a fact-finder determines that the defendant is guilty, there is an
implicit finding against the defensive theory. 
Id.








When a defendant challenges the factual
sufficiency of the evidence supporting a fact-finder=s
rejection of a defense, we review all of the evidence in a neutral light and
ask whether the State=s
evidence taken alone is too weak to support the finding and whether the proof
of guilt, although adequate if taken alone, is against the great weight and
preponderance of the evidence.  Zuliani,
97 S.W.3d at 595.

Analysis

The State argues that there are two reasons why
the trial court=s
judgment should be affirmed.  First,
appellant=s use of
force against the victim was not justified because the victim had engaged only
in verbal provocation.  Nothing more than
words had been exchanged when appellant pulled his gun out and told the victim
to leave his apartment.  Appellant did
not testify that the victim initially threatened him with the knife, only that
the victim Aturned
toward the counter to reach for the knife@
after appellant pulled out his gun. 
Second, even if appellant was entitled to a self-defense claim, the
evidence was factually sufficient to overcome appellant=s
claim.

The State is correct.  Based on appellant=s
own testimony, the trial court could have concluded that the victim did not use
or attempt to use deadly force against appellant before the latter shot
him.  It was rational for the trial court
to disbelieve part or all of appellant=s
testimony.  Appellant admitted during
cross-examination that his version of the event was in direct conflict with Dr.
Peerwani=s
testimony that was based on the forensic evidence.  Appellant was firm in his testimony that the
victim was standing facing him when he shot the victim.  Appellant testified that he and the victim
had just smoked marihuana, but the toxicology report showed that it had been
some time since the victim had smoked marihuana.

The State also points out that appellant=s version was contradicted by Earnest=s testimony.  Earnest testified that the spent shell found
near the door indicated that appellant was not where appellant said he
was.  We must defer on this point to the
trial court.  There were several
instances during the testimony when witnesses physically demonstrated their
points on the apartment diagram, but that diagram is not in the record.  Appellant=s
sole issue is overruled.

This Court=s
Ruling

The judgment of the trial court is affirmed.

 

May 4,
2006                                                                                        TERRY
McCALL

Do not
publish.  See Tex. R. App. P. 47.2(b).                                     JUSTICE

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.